| 99TH CONGRESS<br>*1st Session* } | HOUSE OF REPRESENTATIVES | { REPORT<br>99–296 |
|---|---|---|

## HANDICAPPED CHILDREN'S PROTECTION ACT OF 1985

---

OCTOBER 2, 1985.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

---

Mr. HAWKINS, from the Committee on Education and Labor, submitted the following

# REPORT

together with

# SUPPLEMENTAL VIEWS

[To accompany H.R. 1523]

[Including cost estimate of the Congressional Budget Office]

The Committee on Education and Labor, to whom was referred the bill (H.R. 1523) to amend the Education of the Handicapped Act to authorize the award of reasonable attorneys' fees to certain prevailing parties, to clarify the effect of the Education of the Handicapped Act on rights, procedures, and remedies under other laws relating to the prohibition of discrimination, and for other purposes, having considered the same, report favorably thereon with an amendment and recommend that the bill as amended do pass.

The amendment is as follows:

Strike out all after the enacting clause and insert in lieu thereof the following:

SECTION 1. SHORT TITLE.

This Act may be cited as the "Handicapped Children's Protection Act of 1985".

SEC. 2. AWARD OF ATTORNEYS' FEES.

Section 615(e)(4) of the Education of the Handicapped Act (hereinafter in this Act referred to as "the Act") is amended by inserting "(A)" after the paragraph designation and by adding at the end thereof the following:

"(B) In any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees, expenses, and costs to the parents or guardian of a handicapped child or youth who is the prevailing party.

"(5) For purposes of this subsection—

71–006 O

2

"(A) fees awarded under this subsection shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished; and

"(B) fees, expenses, and costs awarded under this subsection to a prevailing part may not be paid with funds provided to the State under this Act.".

SEC. 3. EFFECT OF EDUCATION OF THE HANDICAPPED ACT ON OTHER LAWS.

(a) EFFECT ON OTHER LAWS.—Section 615 of the Act is amended by inserting at the end thereof the following new subsection:

"(f) Nothing in this title shall be construed to restrict or limit the rights, procedures, and remedies available under title V of the Rehabilitation Act of 1973 or other Federal laws redressing the rights of handicapped children and youth, except that before the filing of a civil action under such laws seeking relief that is also available under this part, the procedures under subsections (b)(2) and (c) shall be exhausted to the same extent as would be required had the action been brought under this part.".

(b) REGULATIONS UNDER SECTION 504 OF THE REHABILITATION ACT OF 1973.—With respect to preschool, elementary, secondary, and adult education programs and activities, section 504 of the Rehabilitation Act of 1973 shall be carried out in accordance with regulations under such section in effect on July 4, 1984; unless expressly authorized by Act or Joint Resolution of the Congress approved after July 4, 1984.

SEC. 4. IMPROVEMENTS IN PROCEDURAL SAFEGUARDS UNDER THE ACT.

(a) PUBLIC ACCESS TO HEARING DECISIONS.—Section 615(d)(4) of the Act is amended by inserting "shall be made available to the public consistent with the requirements of section 617(c) and" immediately before "shall also".

(b) INFORMAL COMPLAINT RESOLUTION PROCEDURE.—Section 615(b)(2) is amended—

(1) by striking out the first sentence and inserting in lieu thereof the following:

"Whenever a complaint has been received under paragraph (1) of this subsection, the parents or guardian shall be provided an opportunity to meet informally with the State or local educational agency or intermediate educational unit to resolve the complaint. If the complaint is not resolved satisfactorily or a decision is made not to meet informally, the parents or guardian shall have an opportunity for an impartial due process hearing which shall be conducted by the State educational agency, the local educational agency, or an intermediate educational unit as determined by State law or by the State educational agency."; and

(2) by inserting at the end of such paragraph the following new sentence:

"Any decision regarding participation in an informal meeting under this paragraph shall not affect the availability or provision of any rights of the parents or guardian under this section.".

(c) ANTI-RETALIATION PROVISION.—Section 615 of the Act is amended by inserting at the end thereof the following new subsection:

"(g) No person may discharge, intimidate, retaliate, threaten, coerce or otherwise take an adverse action against any person because such person has filed a complaint, testified, furnished information, assisted, or participated in any manner in a meeting, hearing, review, investigation, or other activity related to the administration of, exercise of authority under, or right secured by this part.".

SEC. 5. EFFECTIVE DATE.

(a) GENERAL PROVISION.—Except as provided in subsection (b), the provisions of this Act shall take effect on the date of enactment of this Act.

(b) LIMITED RETROACTIVE APPLICATION.—The amendments made by sections 2 and 3 shall apply with respect to actions or proceedings brought under section 615(e) of the Education of the Handicapped Act after July 3, 1984, and actions or proceedings brought prior to July 4, 1984, under such section which were pending on July 4, 1984.

## COMMITTEE ACTION

On March 7, 1985 Congressman Williams introduced H.R. 1523, the Handicapped Children's Protection Act of 1985. On March 12, 1985, the Subcommittee on Select Education held a hearing at which members of the Subcommittee heard testimony from the American Association of School Administrators, the National School Boards Association, the Council for Exceptional Children,

3

the Consortium for Citizens with Developmental Disabilities, and a parent. On April 3, 1985, the Subcommittee marked-up the bill. On September 11th and 19th, 1985, the Committee on Education and Labor considered the bill and on the latter date ordered reported by voice vote an Amendment in the Nature of a Substitute.

## BACKGROUND AND NEED FOR LEGISLATION

In 1971 and 1972 two landmark cases established the constitutional rights of handicapped children to a free appropriate public education. The courts found, among other things, that handicapped children's rights under 42 U.S.C. 1983 had been abridged. Section 1983 prohibits, among other things, an agency acting under color of state law from abridging a handicapped person's rights under the Constitution. The cases were *Pennsylvania Association for Retarded Children (P.A.R.C.) v. Commonwealth of Pennsylvania*, 334 F. Supp. 1257 (E.D. Pa. 1971) and 343 F. Supp. 279 (E.D. Pa. 1972) and *Mills v. Board of Education*, 349 F. Supp. 866 (D.D.C. 1972).

In 1973 Congress enacted section 504 of the Rehabilitation Act of 1973. Section 504 prohibits recipients of federal financial assistance from discriminating against persons on the basis of their handicaps. The original legislation defined a handicapped person in terms of employment and ability to benefit from rehabilitation services. In 1974 Congress clarified its intent that section 504 was not limited to employment but rather covered all handicapped persons, including children and youth in relation to education.

In 1975 Congress passed the Education for All Handicapped Children Act (P.L. 94–142), amending the Education of the Handicapped Act (EHA). EHA, as amended, guarantees a free appropriate public education to every handicapped child in a state that accepts EHA funds. EHA includes a process approach for determining what constitutes an "appropriate" education.

The essentials of the process approach are that: (1) the determination of what a child's special educational needs are and what services will be provided must be based on the individual needs of that child; (2) parents and school district personnel have an equal interest and opportunity to participate in resolving the question of what is "appropriate" for the child; and (3) when parents and school districts disagree, there are fair procedures available to resolve differences, including due process hearings and reviews by the State educational agency.

In 1976, Congress adopted 42 U.S.C. 1988, which authorizes a court, at its discretion, to award reasonable attorneys' fees under, among other statutes, 42 U.S.C. 1983 to a party prevailing in any action or proceeding claiming abridgement of his/her constitutional rights.

In 1977 the Department of Health, Education, and Welfare issued regulations implementing section 504 and EHA. The Section 504 regulations were published in the *Federal Register* on May 4, 1977 and the regulations implementing Part B of EHA were published on August 23, 1977. Each regulation recognized the existence of the other and in explaining the relationship between the two each recognized that Congress intended that the other law constituted a separate but equally viable statement of the rights of

4

handicapped children and youth to a free appropriate public education.

Section 504 is enforced by the Office for Civil Rights and EHA is administered by the Office of Special Education Programs (SEP), formerly the Bureau of Education for the Handicapped (BEH).

In 1978, Congress amended title V of the Rehabilitation Act of 1973 to include a new section (section 505) that provides reasonable attorneys' fees to the prevailing party in any action or proceeding brought under section 504.

In sum, since 1978, it has been Congress' intent to permit parents or guardians to pursue the rights of handicapped children through EHA, section 504, and section 1983. Attorneys' fees could be awarded under section 504 (by virtue of section 505) and under section 1983 (by virtue of section 1988). Further, Congress, by establishing a comprehensive scheme of procedural protections under EHA (see above) expected that in appropriate situations these procedures would be used before a parent or guardian filed a law suit.

Congressional intent was ignored by the U.S. Supreme Court when, on July 5, 1984, it handed down its decision in *Smith* v. *Robinson,* 104 S. Ct. 3457 (1984). The Supreme Court held that where EHA is applicable to a complaint presented by a parent or guardian, EHA is the exclusive avenue through which he/she may assert a claim; thereby precluding parents from relying on section 504 and section 1983. Because attorneys' fees were only available for claims brought under section 504 and section 1983 and because these claims were no longer viable, the Court held that attorneys' fees were not available to parents or guardians of handicapped children, notwithstanding the fact that they prevailed in their law suit.

Justice Brennan, writing for himself and Justices Marshall and Stevens, wrote in the dissenting opinion in *Smith* v. *Robinson:*

> The Court's conclusion that the EHA repealed the availability of sections 504 and 1983 to individuals seeking a free appropriate public education runs counter to well-established principles of statutory construction. It finds no support in the terms or legislative history of the EHA. And most important it undermines the intent of Congress in enacting both sections 505(b) and 1988 . . . [W]ith today's decision coming as it does, the handicapped children of this country whose difficulties are compounded by discrimination and by other deprivations of constitutional rights will have to pay the costs. It is at best ironic that the Court managed to impose this burden on handicapped children in the course of interpreting a statute wholly intended to promote the educational rights of those children.

H.R. 1523 is designed to: (1) authorize courts to award reasonable attorneys' fees to parents of handicapped children who prevail in actions or proceedings under EHA; (2) re-establish statutory rights repealed by ther U.S. Supreme Court in *Smith* v. *Robinson,* (3) reaffirm, in light of this decision, the viability of section 504, 42 U.S.C. 1983, and other statutes as separate vehicles for ensuring the rights of handicapped children and the role of OCR in investigating complaints of handicapped discrimination under section 504;

and (4) improve the due process procedures available to handicapped children under EHA.

## AWARD OF ATTORNEYS' FEES

Section 2 of the bill amends section 615(e)(4) of EHA to permit a court, in its discretion, to award reasonable attorneys' fees, costs, and expenses to the parents or guardian of a handicapped child or youth who is the prevailing party in an action or proceeding (a due process hearing or a state level review) brought under Part B of EHA.

The "action or proceeding" language in section 2 of the bill is identical to the language in title VII of the Civil Rights Act of 1964, interpreted by the Supreme Court in *New York Gaslight Club* v. *Carey,* 447 U.S. 54 (1980). In *Gaslight,* the Court held that the use of the phrase "action or proceeding" indicates an intent to subject the losing party to an award of attorneys' fees, expenses and costs incurred in court. The Court's decision also established a similar right under title VII to obtain an award of fees, costs, and expenses incurred in mandatory state and local administrative proceedings, even where no lawsuit is filed.

Consistent with the Supreme Court's reasoning in *Gaslight,* since EHA, like title VII, requires parents to exhaust administrative remedies before seeking judicial relief, if a parent loses at the local or state administrative proceeding but wins on appeal in federal court, the court may award reasonable fees for services performed in connection with both the administrative proceedings and the civil action.

Further, if a parent prevails on the merits at an administrative proceeding (and the agency does not appeal the decision), the parent may be awarded reasonable attorneys' fees, costs, and expenses incurred in such administrative proceeding. Usually, the amount of such fees, costs, and expenses will be agreed to by the public agency. If no agreement is possible, the parent may file a law suit for the limited purpose of receiving an award of reasonable fees, costs, and expenses.

By adopting the "action or proceeding" language, the Committee is guaranteeing that handicapped children and youth and their families are receiving the same protections which the Congress has extended to all other groups (such as minorities and women) in civil rights laws providing for attorneys' fees. By adopting the "action or proceeding" language, the Committee is also increasing the possibility that poor parents will have access to the procedural rights in EHA, thereby making the laws' protections available to all.

It is the Committee's intent that the terms "prevailing party" and "reasonable" be construed consistent with the U.S. Supreme Court's decision in *Hensley* v. *Eckerhart,* 103 S. Ct. 1933 (1983). In this case, the court held, in part, that:

> the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorneys' fees. Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be ex-

6

cluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorneys' fee reduced simply because the court did not adopt each contention raised. But where the plaintiff achieved only limited success, the court should award only that amount of fees that is reasonable in relation to the results obtained.

The phrase "expenses and costs" includes expenses of expert witnesses; the reasonable costs of any study, report, test, or project which is found to be necessary for the preparation of the parents' or guardian's due process hearing, state administrative review or civil action; as well as traditional costs and expenses incurred in the course of litgating a case (*e.g.*, depositions and interrogatories).

It is also the Committee's intent that, consistent with section section 300.10 of title 34 of the Code of Federal Regulations (EHA regulations), the term "parent" includes a person acting as a parent of a child or a surrogate parent who has been appointed in accordance with section 615(b)(1)(B) of EHA. The term does not include the State if the child is the ward of the State. Of course, under appropriate circumstances a child or youth may also bring an action or proceeding under EHA and receive an award of attorney's fees to the extent he/she prevails.

It is expected that under this section, parents and guardians will select their own attorneys and that to the extent the parents or guardians prevail, the attorneys' fees and other expenses of the litigation may be awarded by the court.

In some actions or proceedings in which the parents or guardian prevail, more than one local or State agency may be named as a respondent. In these cases, it is expected that the court will apportion the award of attorneys' fees and other expense based on the relative culpability of the agencies. Of course, the court cannot require an agency to pay a portion of the fees of other costs, unless that agency is named as a party in the action or proceeding.

In addition to the "action or proceeding language", section 2 provides that attorneys' fees must be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished. *Hensley* v. *Eckerhart,* 103 S. Ct. 1933 (1983); *Blum* v. *Stenson,* 104 S. Ct. 1541 (1984). Section 2 also requires that fees and other expenses awarded by the court may not be paid with EHA funds.

EFFECT OF EHA ON OTHER LAWS

Section 3 of the bill re-establishes the relationship between EHA and section 504 and other statutes redressing the rights of handicapped children that existed prior to the Supreme Court's decision in *Smith* v. *Robinson,* thereby reaffirming the viability of section 504 and other federal statutes such as 42 U.S.C. 1983 as separate from but equally viable with EHA as vehicles for securing the rights of handicapped children and youth.

Specifically, section 3(a) of the bill amends section 615 of EHA by adding a new subsection which provides that nothing in EHA should be construed to restrict or limit the rights, procedures, and

7

remedies available under section 504 or other federal statutes (such as 42 U.S.C. 1983) redressing the rights of handicapped children except that before going to court, parents or guardians seeking relief that is also available under EHA must exhaust administrative remedies available under EHA to the same extent as would be required had the action been brought under EHA.

In other words, parents alleging violations of section 504 and 42 U.S.C. 1983 are required to exhaust administrative remedies before commencing actions in court where exhaustion would be required under EHA and the relief they seek is also available under EHA. Thus, under these circumstances, the obligation to exhaust administrative remedies before pursuing a court action under section 504 and 42 U.S.C. 1983 is identical to that required under EHA and comparable to that required under title VII of the Civil Rights Act of 1964. Therefore, courts may award fees and expenses incurred at the administrative as well as the court level in actions brought under section 504 and 42 U.S.C. 1983 pursuant *New York Gaslight Club* v. *Carey*, 447 U.S. 54 (1980). *Compare Webb* v. *Dyer County Board of Education,* No. 83–1360 April 17, 1985).

Typically, a parent is required to exhaust administrative remedies where complaints involve the identification, evaluation, education placement, or the provision of a free appropriate public education to their handicapped child. However, there are certain situations in which it is not appropriate to require the use of due process and review procedures set out in section 615(b) and (c) of EHA before filing a law suit.

These include complaints that: (1) it would be futile to use the due process procedures (e.g., an agency has failed to provide services specified in the child's individualized educational program (IEP) or an agency has abridged a handicapped child's procedural rights such as the failure to make a child's records available); (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies (e.g., the hearing officer lacks the authority to grant the relief sought); and (4) an emergency situation exists (e.g., the failure to take immediate action will adversely affect a child's mental or physical health).

In addition, with respect to the filing of a civil action, nothing in the bill or the report should be construed to modify traditional standards used by the courts for determining when parents and guardians may initiate law suits and the circumstances under which it is appropriate to grant a preliminary injunction.

It is also the Committee's intent not to modify existing policy regarding the use by parents and guardians of alternative avenues in pursuing complaints, including: the filing of a complaint with the State educational agency under section 76.780 of the Education Department General Administrative Regulations (EDGAR); or filing a complaint with the Office for Civil Rights (34 CFR 104.61).

Several witnesses testified regarding the need to clarify the availability of these avenues. In particular, the Committee urges the Department of Education to develop additional criteria for implementing the EDGAR complaint procedures; provide additional technical assistance to SEAs; monitor SEA implementation; and re-

8

quire that parents and professionals be informed about the availability of this procedure.

Section 3(b) of the bill provides that with respect to preschool, elementary, secondary, and adult education programs and activities, section 504 must continue to be carried out in accordance with the regulations in effect on July 4, 1984 unless expressly authorized by Act or Joint Resolution of the Congress approved after July 4, 1984.

The section 504 regulations were the result of extensive consideration in the regulatory process. Over a thousand comments were considered and public hearings were held in Washington, D.C. and around the country. (42 FR 22676, 22677 (May 4, 1977). Congress had the opportunity to review these regulations during oversight hearings in 1977, preceding the passage of the 1978 Amendments to the Rehabilitation Act of 1973. At that time, Congress explicitly approved the section 504 regulations.

This view of the section 504 regulations has been upheld in two unanimous recent Supreme Court decisions. In *Consolidated Rail Corporation* v. *Darrone*, 104 S. Ct. 1248 (1984), the Supreme Court found that the "responsible congressional committees participated in their formulation, and both these committees and Congress itself endorsed the regulations in their final form." The court also found that in passing the 1978 amendments, "Congress incorporated the substance of the Department's regulations into the statute."

In *Alexander* v. *Choate,* 105 S. Ct. 712 (1985), the Supreme Court characterized its decision in *Darrone* as "holding that 1978 Amendments to the Act were intended to codify the regulations enforcing section 504."

The intent of section 3(b) of the bill is to reaffirm Congress' endorsement of the section 504 regulations. In addition, it is the Committee's intent to reaffirm OCR's role in investigating complaints and conducting compliance reviews under policies presently in existence. It is also the intent to reaffirm the relationship between section 504 and EHA prior to *Smith* v. *Robinson. See* the section-by-section analysis accompanying the section 504 regulation 42 FR 22690 (May 4, 1977) and the analysis accompanying the regulations implementing Part B of EHA, 42 FR 42504 (August 23, 1977).

The term "regulations" in section 3(b) of the bill is limited to procedures and standards published in the Code of Federal Regulations. With respect to preschool, elementary, secondary, and adult education programs funded by the Department of Education, it is limited to procedures and standards published in subparts A, B, C, D, and G of part 104 of title 34 of the Code of Federal Regulations 9184). Thus, the term "regulations" does not include rulings or interpretations contained in letters of findings or other documents issued by the Office for Civil Rights or other offices within the Department of Education.

## IMPROVEMENTS IN PROCEDURAL SAFEGUARDS

Section 4 of the bill includes three amendments to part B of EHA designed to improve procedural protections for handicapped children under the Act. First, section 615(d)(4) is amended by adding a new requirement that written findings of fact and decisions handed down by hearing examiners and those conducting

9

state reviews must be made available to the public without diminishing the privacy rights of the handicapped children.

The Secretary is encouraged to compile and analyze these decisions as well as the complaints resolved informally and the court cases in which no further appeals are possible. The Committee believes it is important to ascertain the number and percentage of cases in which the parents prevail and in those cases in which the parents prevailed, the amount of attorneys' fees, costs, and expenses paid by the public agency.

Second, section 4 of the bill requires that an LEA provide parents or a guardian with an opportunity to meet informally with educational agency officials to resolve a complaint prior to the due process hearing.

By adding this provision, the Committee intends to provide an additional mechanism for securing informal resolution short of recourse to the more formal procedures currently in the law. Presently, the U.S. Department of Education encourages but does not require school districts to offer parents an opportunity to meet informally. *See* 34 CFR 300.506 Comment.

Numerous school districts around the country are using mediation and other informal procedures to resolve complaints. (Under the bill the use of a mediator is permitted but not required.) The successful role that mediation and other forms of informal complaint resolution is playing in special education cases was recently documented in a study prepared for the National Institute for Dispute Resolution entitled "Mediation in Special Education" (1985).

The Superintendent of the Dallas Independent School District (one of the largest school districts in the country) testified before the Subcommittee on Select Education that for the last two years, they have "mediated every single complaint to the satisfaction of both parties."

It is the Committee's intent that the decision whether or not to meet informally to resolve a complaint will be at the parents' or guardian's discretion and that they will not be penalized for deciding to forego this informal meeting. Further, it is expected that the parents or guardian will decide whether they want to represent themselves at the meeting or invite another person to accompany them to and advise them at the meeting and the school district or other public agency will do the same.

A parent's decision to participate in an informal meeting cannot result in the denial or delay or availability of other rights under section 615 of the Act. For example, it is not the Committee's intent to extend the timeliness for resolving complaints presently set out in the regulations implementing part B of EHA (34 CFR 300.512). Thus, a public agency must ensure that not later than 45 days after the filing of a complaint by a parent or guardian, a final decision is reached in the due process hearing and a copy of the decision mailed to each of the parties.

The informal meeting must be held shortly after the filing of the complaint to ensure that the 45 day period is followed. Of course, if both parties agree that it would be fruitful to extend the 45 day period in order to reach an agreement, the Committee's amendment should not be construed as preventing such an extension.

10

In addition, if a record of the informal meeting is kept, it is the Committee's intent that the record not be introduced at the due process hearing, state appeal, or in court if either side objects.

The third amendment in section 4 of the bill prohibits any person from discharging, intimidating, retaliating, threatening, coercing, or otherwise taking an adverse action against another person because he/she filed a complaint, testified, furnished information, assisted, or participated in any manner in a meeting, hearing, review, investigation, or any other activity related to the administration of, or exercise of authority under, or right secured by part B of EHA. This anti-retaliation provision is similar to and consistent with provisions applicable to other comparable federal laws (*See, for example* 34 CFR 100.7(e)(1984)).

For purposes of section 4(c) of the bill, the term "person" the first time it is used in the section means a state educational agency, local educational agency, intermediate educational unit, or any official or employee thereof.

### EFFECTIVE DATES

Section 5 specifies that the effective date for the provisions in section 4 of the bill (improvements in procedural safeguards) is the date of enactment. The provisions in section 2 (award of attorney's fees) and section 3 (effect of EHA on other laws) apply retroactively with respect to actions or proceedings brought under section 615(e) of EHA after July 3, 1984 and actions or proceedings under such section brought prior to July 4, 1984, which was pending on July 4, 1984.

### CONGRESSIONAL BUDGET OFFICE ESTIMATE.

In compliance with clause 2(1)(3)(C) of Rule XI of the Rules of the House of Representatives, the estimate prepared by the Congressional Budget Office pursuant to section 403 of the Congressional Budget Act of 1974, submitted prior to the filing of this report, is set forth as follows:

U.S. CONGRESS,
CONGRESSIONAL BUDGET OFFICE,
*Washington, DC, September 20, 1985.*

Hon. AUGUSTUS F. HAWKINS,
*Chairman, Committee on Education and Labor,*
*House of Representatives, Washington, DC.*

DEAR MR. CHAIRMAN: The Congressional Budget Office has examined the federal cost impact of H.R. 1523, the Handicapped Children's Protection Act of 1985, as ordered reported from the House Education and Labor Committee, September 19, 1985. This bill amends the Education of all Handicapped Children Act, (EAHCA) to allow for the award of reasonable attorney's fees to certain prevailing parties in lawsuits and to clarify the effect of the EAHCA on rights procedures, and remedies under other laws relating to the prohibition of discrimination.

Based on our analysis there would be no increase in federal costs as a result of this bill. H.R. 1523, however, could affect the budgets of state and local governments. EAHCA (PL 94–142) requires local

public school districts in the United States to provide a free and appropriate public education to all handicapped children in the school district. This bill would authorize the award of reasonable attorney's fees to prevailing parties that successfully litigate cases under the amended EAHCA. In the past, successfully litigated cases under the EAHCA had relied on the authority of other laws in awarding attorneys' fees. The Supreme Court recently ruled, however, in Smith v. Robinson that the EAHCA remedies may not be enlarged to include items such as attorneys' fees by resorting to other laws. If cases are successfully litigated under the amended EAHCA against a state or local education authority, then that authority could be responsible for paying the attorneys' fees. Historically, there have been 42 successfully litigated cases under EAHCA of which 23 involved claims. Of those cases, 15 had been awarded attorneys' fees ranging from $2,000 to $212,000 depending on the type and scope of the case.

Please call me if you have any questions or have your staff contact Deborah Kalcevic (226–2820).

With best wishes.

Sincerely,

RUDY PENNER.

## COMMITTEE ESTIMATE

With reference to the statement required by clause 7(a)(1) of Rule XIII of the Rules of the House of Representatives, the Committee agrees with the estimate prepared by the Congressional Budget Office.

## INFLATIONARY IMPACT STATEMENT

Pursuant to clause 2(l)(4) of Rule XI of the Rules of the House of Representatives, the Committee estimates that the enactment of H.R. 1523 will have no inflationary impact on prices and costs in the operation of the national economy. It is the judgment of the Committee that there is no inflationary impact of this legislation as a component of the Federal budget.

## COMMITTEE FINDINGS

With reference to the statement required by clause 2(l)(3)(A) of Rule XI of the Rules of the House of Representatives regarding any findings or recommendations pursuant to this Committee's oversight reviews or studies, the Subcommittee on Select Education has conducted a legislative hearing on this bill.

## OVERSIGHT FINDINGS AND RECOMMENDATIONS OF THE COMMITTEE ON GOVERNMENT OPERATIONS

In compliance with clause 2(l)(3)(D) of Rule XI of the Rules of the House of Representatives, the Committee states that no findings or recommendations of the Committee on Government Operations were submitted to the Committee with reference to the subject matter specifically addressed by H.R. 1523.

12

## Summary

The Committee on Education and Labor finds that H.R. 1523, as amended appropriately authorizes the award of reasonable attorneys' fees to parents who are prevailing parties; clarifies the effect of the Education of the Handicapped Act on rights, procedures, and remedies under section 504 of the Rehabilitation Act of 1973 and other laws redressing the rights of handicapped children; and otherwise amends part B of EHA.

## Section-by-Section Analysis

### Short Title

Section 1 of the bill cites the title as the "Handicapped Children's Protection Act of 1985".

### Award of Attorneys' Fees

Section 2 of the bill amends section 615(e)(4) of the Education of the Handicapped Act (EHA) to authorize the court, at its discretion to award reasonable attorneys' fees, costs, and expenses to a parent who prevails in an action or proceeding brought under such section. Section 2 also specifies that fee awards should be based on the prevailing community rates for the kind and quality of services furnished and prohibits the use of EHA funds to pay the fees, costs and expenses awarded.

### Effect of Education of the Handicapped Act on Other Laws

Section 3(a) of the bill amends section 615 of EHA by requiring handicapped children and youth to exhaust administrative remedies set out in part B of EHA before filing a law suit under section 504 of the Rehabilitation Act of 1973 or other federal laws redressing the rights of handicapped children and youth where relief is also available under EHA.

Section 3(b) of the bill provides that with respect to preschool, elementary, secondary, and adult education programs and activities, section 504 of the Rehabilitation Act of 1973 shall be carried out in accordance with regulations under such section in effect on July 4, 1984, unless expressly authorized by Act or Joint Resolution of the Congress approved after July 4, 1984.

### Improvements in Procedural Safeguards Under the Act

Section 4(a) of the bill amends section 615(d)(4) of EHA by specifying that local and state hearing decisions must be made available to the public without breaching the privacy rights of the handicapped children involved in the hearings.

Section 4(b) of the bill amends section 615(b)(2) of EHA to require public agencies to meet informally with parents in an attempt to resolve complaints informally before proceeding to a due process hearing. Any decision regarding participation in an informal meeting may not affect the availability or provision of any rights of the parents or guardian.

Section 4(c) prohibits a person (such as an employee or official of a State educational agency, local educational agency or intermedi-

13

ate educational unit) from, among other things, retaliating against a person because such person exercised certain rights in a meeting, hearing, review, investigation, or other activity related to the administration of, exercise of authority under, or right secured by part B of EHA.

### EFFECTIVE DATE

Section 5 of the bill specifies the effective date of the bill as the date of enactment, except that sections 2 and 3 apply with respect to actions or proceedings brought under section 615(e) of the EHA after July 3, 1984 and actions or proceedings brought prior to July 4, 1984, under such section which were pending on July 4, 1984.

### CHANGES IN EXISTING LAW MADE BY THE BILL, AS REPORTED

In compliance with clause 3 of rule XIII of the Rules of the House of Representatives, changes in existing law made by the bill, as reported, are shown as follows (existing law proposed to be omitted is enclosed in black brackets, new matter is printed in italic, existing law in which no change is proposed is shown in roman):

### SECTION 615 OF THE EDUCATION OF THE HANDICAPPED ACT

#### PROCEDURAL SAFEGUARDS

SEC. 615. (a) Any State educational agency, any local educational agency, and any intermediate educational unit which receives assistance under this part shall establish and maintain procedures in accordance with subsection (b) through subsection (e) of this section to assure that handicapped children and their parents or guardians are guaranteed procedural safeguards with respect to the provision of free appropriate public education by such agencies and units.

(b)(1) * * *

* * * * * * *

*Whenever a complaint has been received under paragraph (1) of this subsection, the parents or guardian shall be provided an opportunity to meet informally with the State or local educational agency or intermediate educational unit to resolve the complaint. If the complaint is not resolved satisfactorily or a decision is made not to meet informally, the parents or guardian shall have an opportunity for an impartial due process hearing which shall be conducted by the State educational agency, the local educational agency, or an intermediate educational unit as determined by State law or by the State educational agency.*

(2) [Whenever a complaint has been received under paragraph (1) of this subsection, the parents or guardian shall have an opportunity for an impartial due process hearing which shall be conducted by the State educational agency or by the local educational agency or intermediate educational unit, as determined by State law or by the State educational agency.] No hearing conducted pursuant to the requirements of this paragraph shall be conducted by an employee of such agency or unit involved in the education or care of the child. *Any decision regarding participation in an informal meeting under this paragraph shall not affect the availability*

14

*or provision of any rights of the parents or guardian under this section.*

\* \* \* \* \* \* \*

(d) Any party to any hearing conducted pursuant to subsections (b) and (c) shall be accorded (1) the right to be accompanied and advised by counsel and by individuals with special knowledge or training with respect to the problems of handicapped children, (2) the right to present evidence and confront, cross-examine, and compel the attendance of witnesses, (3) the right to a written or electronic verbatim record of such hearing, and (4) the right to written findings of fact and decision (which findings and decisions *shall be made available to the public consistent with the requirements of section 617(c) and* shall also be transmitted to the advisory panel established pursuant to section 613(a)(12)).

(e)(1) A decision made in a hearing conducted pursuant to paragraph (2) of subsection (b) shall be final, except that any party involved in such hearing may appeal such decision under the provisions of subsection (c) and paragraph (2) of this subsection. A decision made under subsection (c) shall be final, except that any party may bring an action under paragraph (2) of this subsection.

\* \* \* \* \* \* \*

(4)(A) The district courts of the United States shall have jurisdiction of actions brought under this subsection without regard to the amount in controversy.

*(B) In any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees, expenses, and costs to the parents or guardian of a handicapped child or youth who is the prevailing party.*

*(5) For purposes of this subsection—*

*(A) fees awarded under this subsection shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished; and*

*(B) fees, expenses, and costs awarded under this subsection to a prevailing party may not be paid with funds provided to the State under this Act.*

*(f) Nothing in this title shall be construed to restrict or limit the rights, procedures, and remedies available under title V of the Rehabilitation Act of 1973 or other Federal laws redressing the rights of handicapped children and youth, except that before the filing of a civil action under such laws seeking relief that is also available under this part, the procedures under subsections (b)(2) and (c) shall be exhausted to the same extent as would be required had the action been brought under this part.*

*(g) No person may discharge, intimidate, retaliate, threaten, coerce or otherwise take an adverse action against any person because such person has filed a complaint, testified, furnished information, assisted, or participated in any manner in a meeting, hearing, review, investigation, or other activity related to the administration of, exercise of authority under, or right secured by this part.*

## SUPPLEMENTAL VIEWS (H.R. 1523), THE HANDICAPPED CHILDREN'S PROTECTION ACT OF 1985

H.R. 1523, the Handicapped Children's Protection Act of 1985, responds to the Supreme Court decision in the case of *Smith* v. *Robinson* which prohibited parents from recovering attorneys' fees under P.L. 94–142, the Education for All Handicapped Children Act and clouded the relationship between P.L. 94–142 and a number of civil rights statutes including Section 504 of the Rehabilitation Act of 1973. The Supreme Court decision in *Smith* seriously impairs the ability of parents to enforce their handicapped child's rights under P.L. 94–142. H.R. 1523 effectively overturns *Smith,* but unfortunately, as reported by the Full Committee on Education and Labor, goes beyond the necessary legislative response to *Smith* so as to pose a threat of serious financial burden to state and local educational agencies and polarize the relationship between parents and educators in due process hearings, as well as to unnecessarily restrict the Executive Branch's authority to promulgate regulations and effectively enforce the law.

We support the major objective of H.R. 1523 which appropriately responds to *Smith* by amending P.L. 94–142 to allow Courts to authorize an award of reasonable attorneys' fees to parents who prevail in P.L. 94–142 court actions. In the *Smith* decision, the Court ruled that because P.L. 94–142 is silent on the issue of attorneys' fees, Congress must have intended that disputes between parents of handicapped children and school systems were to be resolved through the law's administrative remedies, and following, in court, but without benefit of recovering attorneys' fees. (Prior to *Smith,* parents seeking to recover attorneys' fees in P.L. 94–142 cases would file parallel claims under the Rehabilitation Act (29 U.S.C. § 794a(b)) and/or the Civil Rights Attorneys' Fees Awards Act of 1976 (42 U.S.C. § 1988)). While the Court's emphasis on resolving P.L. 94–142 disputes at the administrative level is consistent with Congressional intent, disallowing the recovery of attorneys' fees for court actions in which the parents prevailed unfairly burdens parents who successfully enforced their handicapped child's right to a free and appropriate public education.

Unwisely, H.R. 1523 extends, without limitation, the right to recover attorneys' fees to the administrative procedures available under P.L. 94–142 for the first time. This provision could radically alter the delicate balance that currently exists in P.L. 94–142's due process system, resulting in a severe financial burden for state educational agencies and local school systems. Since P.L. 94–142's enactment in 1975, there are no reported instances of attorneys' fees awards at the administrative level in cases not subsequently litigated in court, and only four instances (*Department of Education* v. *Valenzuela,* 524 Supp. 261 (D. Hawaii 1981); *Gary B.* v. *Cronin,* 542 F. Supp. 102 (N.D. Illinois 1982); *Patsel* v. *District of Columbia*

16

*Board of Education*, 530 F. Supp. 660 (D. D.C. 1982); *Hilden* v. *Evans*, C.A. No. 80–511 RE (Slip Opinion) (D. Oregon 1980)) where attorneys' fees ahve been awarded at the administrative level in cases which have been litigated in court. In a significant departure from current practice, H.R. 1523 would render state and local educational agencies liable for paying attorneys for due process hearings where the parents prevailed and the case is not brought to court.

H.R. 1523, by allowing for the recovery by a prevailing parent of attorneys' fees at the administrative level without limitation, invites the use of attorneys into a proceeding which does not require either party to be represented by counsel. The increased participation of attorneys in these procedures will lead to a more adversarial relationship between parents and educators and force school systems to use their precious educational dollars to pay lawyers whose participation is not only not required by law, but also may prove counterproductive. In effect, the Federal government, which presently contributes approximately 8 percent of the cost of educating a handicapped child, would, under H.R. 1523, require state education agencies and local school systems to spend their educational funds (P.L. 94–142 funds would not be allowed to be used to pay attorneys' fees) to pay attorneys' fees in a Federally mandated administrative hearing system in those instances when the state and local educational agencies were carrying out their public responsibility of providing what they considered to be an appropriate education.

As voted unanimously out of the Subcommittee on Select Education, H.R. 1523 contained provisions which set certain limitations on fees at the administrative level and represented a bi-partisan compromise. To the chagrin of Members who had forged this agreement, a substitute version of H.R. 1523 was introduced at the Full committee, containing the current controversial provision on fees at the administrative level. Members of the Subcommittee who had marked-up and unanimously passed out of Subcommittee a bill in April of 1985 were confronted in September, 1985, with a radically different substitute bill at Full Committee, without explanation or benefit to consider the new provision as a Subcommittee.

The legislative history of P.L. 94–142 clearly indicates that its originators were sensitive to the issue of unduly burdening state and local educational agencies. On the specific issue of the law's procedural safeguards the late Honorable Carl D. Perkins said,

> . . . finally, there are a number of procedural safeguards in this legislation which are designed to further the Congressional goal of insuring a full educational opportunity for all handicapped children. It was my desire to establish those procedures and safeguards without overburdening local school districts and state educational agencies.
>
> I believe that the conference report quite properly recognizes the rights of handicapped children and their parents while at the same time insures that these rights will be respected without demanding unnecessary and time-consuming action on the part of our local schools. *(Congressional Record,* November 18, 1975, p. 37025).

H.R. 1523 represents a serious threat to local school districts and state educational agencies because of the significant costs for which they may be liable. The administrative fees provision in H.R. 1523 is certain to make P.L. 94–142's due process system more litigious, and costly—and not necessarily any better.

A second major concern with H.R. 1523 is the provision which "codifies" the regulations under Section 504 of the Rehabilitation Act of 1973. H.R. 1523 will freeze the Section 504 regulations in effect on July 4, 1984, prohibiting the Executive Branch from proposing changes in the regulations unless expressly authorized by an Act or Joint Resolution of the Congress. That provision goes far beyond any action needed to respond to *Smith*, is overly broad in scope, could be read to cover current regulations of many agencies in addition to the Department of Education (including the Departments of Agriculture, Health and Human Services, and Interior, as well as the National Science Foundation and the Veterans' Administration), and is not based on careful consideration of each affected provision.

This codification is an intrusion into the authority of the Executive Branch to administer an important civil rights statute, and ties the hands of any Administration to deal effectively with a dynamic area of law.

The version of H.R. 1523 which was passed out of the Full Committee on Education and Labor correctly amends P.L. 94–142 to allow courts to authorize attorneys' fees to parents who prevail in litigation, but goes too far in allowing attorneys' fees to be recovered at the administrative level without limitation. The bill also correctly clarifies the relationship between P.L. 94–142 and civil rights statutes including Section 504 of the Rehabilitation Act of 1973, but then goes too far and unnecessarily codifies the Section 504 regulations. The failure of the Committee on Education and Labor to demonstrate reasonable restraint on this legislation should not be repeated by the House. We encourage Members to support efforts that will address these issues.

JIM JEFFORDS.
BILL GOODLING.
THOMAS E. PETRI.
MARGE ROUKEMA.
STEVE GUNDERSON.
STEVE BARTLETT.
ROD CHANDLER.
TOM TAUKE.
DICK ARMEY.

## SUPPLEMENTAL VIEWS (H.R. 1523), THE HANDICAPPED CHILDREN'S PROTECTION ACT OF 1985

I concur with the supplemental views on H.R. 1523 as they pertain to the payment of attorney fees under P.L. 94–142. I do not concur with the supplemental views of my colleagues on the other

18

issue covered by H.R. 1523, and endorse the "codification" of regulations issued under Section 504 of the Rehabilitation Act of 1973.

PAUL B. HENRY,
*Member of Congress.*

○